Adam J Schwartz (SBN 251831)
5670 Wilshire Blvd., Suite 1800
Los Angeles, CA 90036
p: (323) 455-4016
e-service: adam@ajschwartzlaw.com

[Additional counsel appear on signature page]

*Attorneys for Plaintiff Johnathan Threde and
the Proposed Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| JOHNATHAN THREDE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VOLLARA, LLC and BOB SAGAR,<br><br>Defendants. | Case No. 3:21-cv-3865<br><br>**COMPLAINT FOR INJUNCTION AND DAMAGES**<br><br>**Class Action**<br><br>**JURY TRIAL DEMAND** |

    Plaintiff Johnathan Threde, by his undersigned counsel, for this class action complaint against Defendant Vollara, LLC ("Vollara") and Bob Sagar ("Mr. Sagar") (collectively referred to as "Defendants"), and its present, former, and future direct and indirect parents, subsidiaries, affiliates, agents, and related entities, alleges as follows:

### I.   INTRODUCTION

    1.   As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell

phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at \*5 (July 6, 2020).

2.  Vollara uses a series of third parties to distribute their services, including Bob Sagar.

3.  Mr. Sagar generated business for Vollara making telemarketing calls that employed a prerecorded or artificial voice, tactics among those that inspired Congress to enact the TCPA and that most infuriate Americans to this day.

4.  Automated telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, and Plaintiff brings this action on behalf of a proposed class of persons—defined more specifically herein—who received such calls promoting Vollara services.

5.  Plaintiff and proposed class members did not provide prior express written consent to receive these calls.

## II.    PARTIES

6.  Plaintiff is a natural person.

7.  Plaintiff is a "person" within the meaning of 47 U.S.C. § 153(39).

8.  Plaintiff resides in Contra Costa County, California.

9.  Vollara, LLC is a Texas limited liability company.

10. Bob Sagar is an individual residing in Rockville Centre, New York and is one of the distributors of Vollara, LLC's goods and services.

## III.    JURISDICTION AND VENUE

11. This Court has personal jurisdiction over Defendant Vollara because it distributes its goods and services directly into California. It also makes the solicitations for those goods and services through third parties, and such solicitations are made into California, as occurred with the Plaintiff.

12. This Court has personal jurisdiction over Defendant Mr. Sagar because he purposefully directed his activities into California by calling Plaintiff (a Californian), while he was in California, at his phone number, which bears a California area code, and because Plaintiff's claims arise from those activities.

13. <u>Jurisdiction</u>: This Court has federal-question subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the receipt of the challenged telemarketing—occurred in this District.  Moreover, Plaintiff received the robocalls at a phone number bearing an area code from within this District.

15. <u>Intradistrict Assignment</u>: Assignment to this Division is proper pursuant to Civil Local Rule 3-2(c) because a substantial part of the events or omissions that give rise to Plaintiff's claims—namely, the receipt of the challenged telemarketing—occurred in this Division. Moreover, Plaintiff received the telemarketing at a phone number bearing an area code from within this Division.

## IV.    FACTS

**A.    The Enactment of the TCPA and the FCC's Regulations Thereunder**

16. Enacted in 1991, the TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service."  47 U.S.C. § 227(b)(1).

17. Calls made with a prerecorded or artificial voice are referred to as "robocalls" by the Federal Communications Commission ("FCC") and herein.

18. Encouraging people to hold robocallers accountable on behalf on their fellow Americans, the TCPA provides a private cause of action to persons who receive such calls.  47 U.S.C. § 227(b)(3).

19. In enacting the TCPA, Congress found: "Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy."  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 § 2(10).

20. Congress continued: "Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* § 2(12).

21. The TCPA's sponsor described computerized calls as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1044 (9th Cir. 2018).

22. According to findings by the FCC, which Congress vested with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live-solicitation calls and can be costly and inconvenient.

23. The FCC has made clear that "prior express written consent" is required before making telemarketing robocalls to wireless numbers. Specifically, it ordered:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted).

**A.    Mr. Sagar's Telemarketing Robocall Conduct**

24. Mr. Sagar makes pre-recorded calls to numbers even though they are assigned to cellular telephone services.

25. Recipients of these calls, including Plaintiff and proposed class members, had not provided prior express written consent to receive them.

26. Mr. Sagar's calls at issue were not necessitated by an emergency.

27. Mr. Sagar's calls at issue were made to numbers within the United States.

28. Violating the TCPA is profitable for Mr. Sagar, as pre-recorded calls to not take nearly the time and money it would take to lawfully contact each of the call recipients.

29. For every 18 million robocalls, there's only one TCPA lawsuit in federal court. *Compare* Mike Snider, *Robocalls Rang up a New High in 2019. Two or More Daily Is Average in Some States*, USA Today (Jan. 15, 2020), https://www.usatoday.com/story/tech/2020/01/15/robocalls-americans-got-58-5-billion-2019/4476018002/ (58.5 billion robocalls), *with* WebRecon, *WebRecon Stats for Dec 2019 and Year in Review: How Did Your Favorite Statutes Fare?*, https://webrecon.com/webrecon-stats-for-dec-2019-and-year-in-review-how-did-your-favorite-statutes-fare/ (last visited Mar. 25, 2020) (3,267 TCPA complaints).

**B.    Defendant's Telemarketing Robocalls to Plaintiff**

30. Plaintiff is the owner, payor, and user of a phone number that begins "(925) 939." The calls to him described herein were to that number.

31. Mr. Sagar called Plaintiff at least twice using a pre-recorded voice.

32. This included calls on April 14 and 19, 2021.

33. Mr. Sagar called Plaintiff while transmitting the caller ID (951) 477-3261.

34. The area code is local to the Plaintiff's residence even though the call wasn't made from California.

35. In other words, Mr. Sagar used a "spoofed" area code to deceive call recipients into believing that someone local to them was calling.

36. The pre-recorded calls offered air purifier services.

37. The pre-recorded calls instructed the recipient to call (516) 454-1250.

38. To investigate the source of the illegal calls, a call was placed to (516) 454-1250.

39. In response, Mr. Sagar returned the call.

40. Following the call, an e-mail was received from Mr. Sagar.

41. The e-mail promoted Vollara services, including offering the following weblinks for "Scientific Proof" that the Vollara air purifying system worked:

- https://www.vollara.com/scientific-proof/?u=CleanAirIsLife
- https://www.vollara.com/scientific-proof-chart-two/?u=CleanAirIsLife
- https://www.vollara.com/scientific-proof-chart-three/?u=CleanAirIsLife
- https://www.vollara.com/scientific-proof-chart-four/?u=CleanAirIsLife
- https://www.vollara.com/scientific-proof-chart-five/?u=CleanAirIsLife
- https://www.vollara.com/scientific-proof-final-charts/?u=CleanAirIsLife
- https://vollara.blob.core.windows.net/resources-prod/Air/Air%20Research/Testing%20Charts_1011.pdf
- https://vollara.blob.core.windows.net/resources-prod/Air/Air%20Research/TestResultsforAerusLLC_inactivationofLpneumophila(Fresh%20Air)_final_Redacted.pdf

42. Plaintiff is not and has never been a customer of either Defendant.

43. Plaintiff has never provided prior express written consent to receive calls from either Defendant.

44. Prior to the filing of this lawsuit, the Plaintiff contacted Vollara who did not claim to have any such consent, but indicated that a third party must have contacted the Plaintiff.

45. Plaintiff and other putative class members were injured and had their privacy violated by the unsolicited calls.

**C.   Vollara Is Vicariously Liable for Mr. Sagar's Calls**

46. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

47. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

48. The FCC has instructed that sellers may not avoid liability by outsourcing telemarketing to third parties, warning that

> allowing the seller to avoid potential liability by outsourcing its
> telemarketing activities to unsupervised third parties would leave

consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

49. The FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

50. Vollara retains third-party vendors to telemarket its goods and services.

51. Vollara is vicariously liable for its telemarketers' TCPA violations.

52. Vollara could have restricted Mr. Sagar from using automated telemarketing, but it didn't.

53. Vollara exercised interim control over its telemarketers and Mr. Sagar by:

    a.     Acquiescing to his business model choice of using pre-recorded messaeges;

    b.     instructing him on the geographic regions they can make calls into;

    c.     providing qualifications for potential clients;

54. Vollara also granted its telemarketers and Mr. Sagar access to its systems.

55. For example, when Mr. Sagar e-mailed Mr. Threde following the pre-recorded voicemail, Mr. Sagar's signature line had a hyperlink for the website: Vollara.com/CleanAirIsLife.

56. This link takes the user to the Vollara website.

57. The Vollara website states: "WELCOME FROM: BOB SAGAR".

58. The website further directs any questions regarding the products offered to Mr. Sagar.

59. Other than those instructions, the website is identical to a visit to the Vollara website made by any individual.

60. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## V. CLASS ACTION ALLEGATIONS

61. Pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of a class defined as follows: All persons in the United States to whom:

    a.     one or more calls were made;

    b.     to a cellular telephone number;

    c.     intended to promote Defendant's goods or services;

    d.     using an artificial or prerecorded voice;

    e.     between the date four years before the filing of the original complaint in this case and the first day of trial.

Notwithstanding anything herein to the contrary, excluded from the class are Defendants, any entity in which Defendants have a controlling interest or that has a controlling interest in Defendants, Defendants' legal representatives, assignees, and successors, the judges to whom this case is assigned, and the employees and immediate family members of all of the foregoing.

62. Plaintiff is a member and proposed representative of the class.

63. The class is identifiable through phone records and phone number databases.

64. The class is so numerous that joinder of all its members is impracticable.

65. Sending a robocall costs less than one cent and many minimum orders for robocalls require payments of more than $100. As such, it is reasonable to assume that class members are in the thousands, or more.

66. Outcome-determinative questions of fact and law have the same answers for all class members.  These questions and answers include but are not limited to the following:

  a. Did the caller contact the class member at a cellular telephone number? (Yes.)

  b. Did the caller contact the class member using an artificial or prerecorded voice?  (Yes.)

  c. Was the purpose of the calls to the class member telemarketing?  (Yes.)

  d. Were the calls to the class member necessitated by an emergency?  (No.)

  e. Had the class member provided prior express written consent before being called?  (No.)

  f. What is the minimum statutory damages per violation the class member is entitled to?  ($500.)

  g. Were Defendants' violations of the class member's rights under the TCPA knowing and willful?  (Yes.)

  h. How much in statutory damages per violation should the Court award the class member?  ($1,500.)

  i. Should Defendants be enjoined?  (Yes.)

67. The foregoing common issues predominate over any individual issues, making a class action the superior means of resolution.  Adjudication of these common issues in a single action has important advantages, including judicial economy, efficiency for class members, and classwide *res judicata* for Defendants. Classwide relief is essential to compel Defendants to comply with the TCPA.

68. Plaintiff's claims are typical of the claims of the class.  Plaintiff's claims and those of the class arise out of the same automated telemarketing by Defendants and seek the same legal and equitable remedies.

69. Plaintiff will fairly and adequately protect the interests of the class.

70. Plaintiff has retained competent and capable counsel experienced in TCPA class action litigation.

71. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the class and have the financial resources to do so.

72. The interests of Plaintiff and his counsel are aligned with those of the proposed class.

73. The interest of individual members of the class in individually controlling the prosecution of separate claims against Defendants is small because the damages in an individual action (up to $1,500 per TCPA violation) are dwarfed by the cost of prosecution.

74. No significant difficulty is anticipated in the management of this case as a class action.  Management of the claims at issue is likely to present significantly fewer difficulties than are presented in many class actions because the calls at issue are automated (and thus uniform) and because the TCPA articulates bright-line standards for liability and damages.

## VI.    FIRST CLAIM FOR RELIEF
### (Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1))
### On Behalf of Plaintiff and the Class

75. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

76. Defendants violated the TCPA, 47 U.S.C. § 227(b)(1), by placing non-emergency calls to the cellular telephone numbers of Plaintiff and members of the class using an artificial or prerecorded voice, or by the fact that others did so on their behalf.

77. Plaintiff and class members are entitled to an award of up to $1,500 in damages for each knowing or willful violation and of $500 for each other violation.  47 U.S.C. § 227(b)(3)(B).

78. Plaintiff and class members are entitled to and seek an injunction prohibiting Defendants and all other persons who are in active concert or participation with it from violating the TCPA, 47 U.S.C. § 227(b)(1), by placing non-emergency calls to any cellular telephone number using an artificial or prerecorded voice.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of all class members, prays for judgment against Defendant as follows:

A.    Certification of the proposed class;

B.    Appointment of Plaintiff as representative of the class;

C.    Appointment of the undersigned counsel as counsel for the class;

D.    A declaration that actions complained of herein violate the TCPA;

E.    An order enjoining Defendants and all other persons who are in active concert or participation with it from engaging in the conduct set forth herein;

F.    An award to Plaintiff and the class of damages, as allowed by law;

G.    Leave to amend this complaint to conform to the evidence presented at trial; and

H.    Orders granting such other and further relief as the Court deems necessary, just, and proper.

## VIII.    DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

## IX.    SIGNATURE ATTESTATION

The CM/ECF user filing this paper attests that concurrence in its filing has been obtained from its other signatories.

RESPECTFULLY SUBMITTED and DATED on May 21, 2021:

By: _____
Adam J Schwartz

Anthony I. Paronich (*Pro Hac Vice Forthcoming*)
anthony@bparonichlaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

*Attorneys for Plaintiff Johnathan Threde and the
Proposed Class*